UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:09-cv-00454-TWP-DML |
| | ) |
| KATHLEEN LAWRENCE, JEFF | ) |
| RAWNSLEY, KATHLEEN LAWRENCE | ) |
| and JEFF RAWNSLEY as Parents of B.R., | ) |
| a Minor, B.R., MICHELLE FOSTER, and | ) |
| DARRYL RILEY | ) |
| | |
| Defendants. | |

## ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Allstate Insurance Company's ("Allstate") Motion for Summary Judgment [Dkt. 33]. This insurance contract case stems from a personal injury suffered by B.R., a foster child in the care of Defendants Michelle Foster[1] and Darryl Riley (the "Rileys"). Allstate filed suit in this Court seeking a declaratory judgment that B.R. was an "insured person" under the terms of the Rileys' Allstate Property and Casualty Insurance Company Homeowners Policy ("Homeowners Policy") and, therefore, not entitled to any coverage or a defense under the Family Liability Protection or Guest Medical Protection provisions of the Homeowners Policy. B.R.'s biological parents Jeff Rawnsley and Kathleen Lawrence ("Parents") oppose summary judgment because Allstate's interpretation of the contract would bar recovery from Allstate for B.R.'s tort claims against the Rileys. For the reasons set

---

[1] Subsequent to the filing of this suit, Michelle Foster married Darryl Riley and changed her name to Michelle Riley. M. Riley Dep. at 7.

forth below, the Court **GRANTS** Allstate's Motion for Summary Judgment [Dkt. 33].

## I. BACKGROUND

The parties are substantially in agreement as to the general facts of this case. In 2007, B.R. was a three-year old boy. D. Riley Dep. at 10. B.R. exhibited a number of disabilities. M. Riley Dep. at 10. In addition to suspected autism and ADHD, B.R. was non-verbal and suffered from sleeping difficulties and night terrors. *Id.* He also was prone to aggressive behavior, including hitting, biting, and kicking. *Id.* In short, B.R. required special attention from his guardians.

### A. *B.R.'s Introduction into Foster Care*

In June of 2007, the State of Indiana removed B.R. and his older brother from Kathleen Lawrence's care following an injury that B.R. sustained from a fall off of a second floor balcony, as well as allegations of neglect and domestic violence in the home. Hummer Aff. ¶ 4. Due to his disabilities, it was determined that B.R. required placement in a therapeutic foster home.[2] M. Riley Dep. at 10. Adult and Child Mental Health Center, Inc. ("Adult and Child") placed B.R. and his brother in a therapeutic foster home with Rhonda Clark ("Clark"), Michelle Foster's mother and a licensed therapeutic foster parent. Hummer Aff. ¶ 5; M. Riley Dep. at 9.

Clark found the placement of B.R. and his older brother to be extremely challenging. Hummer Aff. ¶ 5. On July 20, 2007, B.R. was removed from his placement with Clark and

---

[2]Therapeutic foster parents receive special training and licensing from the State of Indiana. M. Riley Dep. at 7. Therapeutic foster placements are used for children with special needs and circumstances, including disabilities. *Id.*

placed alone with the Rileys, both licensed therapeutic foster parents. *Id.* The Rileys took care of all of B.R.'s basic needs, including food, clothing, shelter, and medication. M. Riley Dep. at 11–12. They installed various safety devices, including pin locks on sliding doors and special door knobs, to ensure B.R.'s safety in their home. *Id.* at 10. The Rileys also took B.R. to appointments for medical and dental care. *Id.* at 16–17. The Rileys worked with B.R., attempting to teach him to gesture and improve on his aggressive behaviors. *Id.* at 24. B.R. had a bed and his own room in the Rileys' home. *Id.* at 10–11. With the exception of supervised visits with his mother, respite care, and brief outings with his case manager, B.R. was in the Rileys' care continuously from July 20, 2007 until the weekend of September 22, 2007. *Id.* at 23; D. Riley Dep. at 7.

B. *B.R.'s Injuries During Respite Care*

Foster parents are permitted to request respite care, where the child temporarily stays with foster parents other than the primary foster parents to provide "temporary relief from the foster child." Hummer Aff. ¶ 8. On the weekend of September 22, 2007, the Rileys requested respite care for B.R. *Id.* at ¶ 6. To fulfill the Rileys' request, Adult and Child arranged for B.R. to stay with Mark and Penny Hughes (the "Hughes") for the weekend. *Id.* at ¶ 7. The Rileys took B.R. to the Hughes' home, intending to pick him up on the evening of September 23, 2007. M. Riley Dep. at 15; D. Riley Dep. at 14.

On September 22, 2007, while in respite care with the Hughes, B.R. wandered off and was found in a neighbor's swimming pool. M. Riley Dep. at 20. B.R. suffered severe brain injuries and was transported to the hospital, where he remained for several days. *Id.* at 21. The

3

Rileys visited B.R. in the hospital every day for the first two weeks following the accident. *Id.* at 20–21. As a result of the unfortunate accident, B.R. now has more significant disabilities. *Id.* Although the Rileys previously discussed moving B.R. from their care with case workers from Adult and Child and the State of Indiana, B.R. would have returned to the Rileys' care on September 23, 2007 following the respite care weekend with the Hughes, had the accident not occurred. *Id.* at 14–15, 19; D. Riley Dep. at 13–14; Hummer Aff. ¶ 10.

C. *The Rileys' Homeowners Policy*

On September 22, 2007, the Rileys had a Homeowners Policy through Allstate. Compl. Ex. B ("Homeowners Policy"). The personal injury coverage provided under the Homeowners Policy was limited to the Family Liability Protection and Guest Medical Protection provisions. *Id.* at 22.

The Family Liability Protection provision states that "[s]ubject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and covered by this part of the policy." *Id.* However, the Family Liability Protection provision specifically excludes coverage for "bodily injury to an insured person . . . whenever any benefit of this coverage would accrue directly or indirectly to the insured person." *Id.* at 23.

The Guest Medical Protection provision states:

> [Allstate] will pay the reasonable expenses incurred for necessary medical . . . services . . . incurred and . . . performed within three years from the date of the occurrence causing bodily injury to which this policy applies, and is covered by this part of the policy. Each person who sustains bodily injury is entitled to this

4

> protection when that person is . . . off the insured premises, if the bodily injury . . . is caused by the activities of an insured person.

*Id.* at 22. Similar to the Family Liability Protection provision, the Guest Medical Protection provision excludes "bodily injury to any insured person or regular resident of the insured premises." *Id.* at 23. The Homeowners Policy defines "insured person" to include "a resident of your household . . . under age 21 in your care." *Id.* at 3.

On January 28, 2009, B.R's Parents filed a tort suit in Morgan Superior Court against the Rileys, the Hughes, and Adult and Child, among others. On April 13, 2009, Allstate filed suit in this Court, seeking a declaratory judgment that B.R. qualifies as an "insured person" under the Homeowners Policy, and, therefore, the Homeowners Policy does not cover damages that B.R. might recover from the Rileys. Compl. On May 13, 2010, Allstate filed a Motion for Summary Judgment on its declaratory claim.

The Court adds additional facts below as needed.

## II. LEGAL STANDARDS

*A.*   *Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubts as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997).

B.  *Interpretation of Insurance Policies*

The interpretation of an insurance policy is primarily a question of law for the court. *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009). Interpretation and construction of insurance policies follows similar rules as those for general contracts. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). Ambiguities are construed in favor of the insured, but clear and unambiguous policy language must be given its ordinary meaning. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997). An insurance policy is ambiguous if a provision is susceptible to more than one reasonable interpretation. *Id.* However, ambiguity is not established simply because controversy exists and one party asserts an interpretation contrary to the interpretation of the opposing party. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002). In addition, failure to define a term in an insurance policy does not necessarily make the term ambiguous. *Colonial Penn*, 690 N.E. 2d at 667. All policy language is viewed from the

6

standpoint of the insured. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000). In interpreting the policy provisions, the court may not extend insurance coverage beyond that provided in the contact, nor may the court rewrite the policy's clear and unambiguous language. *Bedwell v. Sagamore Ins. Co.*, 753 N.E.2d 775, 779 (Ind. Ct. App. 2001).

### III.  DISCUSSION

All parties agree that if B.R. is an "insured person" under the terms of the Homeowners Policy, the Homeowners Policy precludes recovery from Allstate for his injuries. The Family Liability Protection provision of the Homeowners Policy excludes "bodily injury to an insured person . . . whenever any benefit of this coverage would accrue directly or indirectly to the insured person." Homeowners Policy at 23. Similarly, the Guest Medical Protection provision excludes "bodily injury to an insured person or regular resident of the insured premises." *Id.* Therefore, the issue the Court must determine is whether B.R. is an "insured person" under the Homeowners Policy.

The language of the Homeowners Policy defines an insured person as the named insured and "if a resident of [the named insured's] household . . . any person under the age of 21 in your care." Homeowners Policy at 3. The parties agree that at the time of his injury, B.R. was under the age of 21 and was under the care of the Rileys. Dkts. 34 at 8; 40 at 1; 43 at 1. However, the parties disagree as to whether B.R. was a resident of the Rileys' household at the time of his injury. The Court, therefore, proceeds to determine B.R.'s residence at the time of his injury.

In determining a child's residency in the context of homeowners insurance policies, Indiana courts consider "whether the [child] maintained a physical presence in the named

7

insured's home, whether [he] possessed the subjective intent to reside therein, and the nature of [his] access to the named insured's home and its contents." *Jones v. W. Reserve Grp./Lightning Rod Mut. Ins.* Co., 699 N.E.2d 711, 714 (Ind Ct. App. 1998) (citing *Allstate Ins. Co. v. Neumann*, 435 N.E.2d 591, 594 (Ind. Ct. App. 1982)); *see also Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1159 (7th Cir. 1993) (adopting a similar test but noting that the court must take into account "the totality of the circumstances"). "The person need not be a permanent member of the household, and in fact can be the resident of another household at the same time, but must be more than transient." *Allstate Ins. Co. v. Shockley*, 793 F. Supp. 852, 856 (S.D. Ind. 1991). In *Shockley*, this Court concluded that children staying with their aunt "indefinitely" were residents under the terms of her homeowners policy, noting that the children "lived there continuously for eight weeks, and were completely dependent upon [their aunt] for food, clothing, medicine, shelter, and parental care." *Id.* Allstate asserts that B.R.'s placement with the Rileys was set to continue for an indefinite time. *See* Hummer Aff. ¶¶ 5, 9; *see also generally* M. Riley Dep., D. Riley Dep. (stating that the Rileys did not know when B.R.'s placement with them would end and that, prior to B.R.'s injury, they intended to continue serving as his therapeutic foster parents). Therefore, Allstate contends that, under *Shockley*, B.R. is properly classified as residing with the Rileys.

B.R.'s Parents, noting that Indiana courts have not dealt with residency in the context of foster children, urge the Court to examine other states' treatment of the residency of foster children. In particular, they point to the Alaska Supreme Court's decision in *Falgoust*, the Wisconsin Court of Appeals' decision in *A.G. by Waite*, and the New Mexico Court of Appeals' decision in *Risk Management Division*. B.R.'s Parents contend that all of these cases place

8

significant weight on the temporary nature of foster placement. At the time of his injury, B.R. had been with the Rileys for a little over two months on "Emergency Shelter Care." Hummer Aff. ¶ 4–5. Because B.R.'s placement with the Rileys was temporary until family reunification could be achieved, the Parents argue, there was no subjective intent for B.R. to reside in the Rileys' home. The Parents seek to distinguish *Shockley* based on B.R.'s "emergency" classification. Resp. at 4.

In *Falgoust*, the Alaska Supreme Court concluded that foster children who had been in the insured's home for approximately thirteen months resided there, noting "numerous decisions of courts in other jurisdictions holding that foster children are residents for the purpose of similar homeowner's policies where the foster children had been with their foster parents for more than a few months and had no definite date of departure." *Allstate Ins. Co. v. Falgoust*, 160 P.3d 134, 140 (Alaska 2007). In *A.G. by Waite*, the court specifically delineated between "emergency" foster placement and placement under a specific disposition order, concluding that foster children placed under a one-year disposition order were residents of the foster parent's home. *See A.G. by Waite v. Travelers Ins. Co.*, 331 N.W.2d 643, 645–47 ("[W]e do not consider 'emergency placements' to be in the same category as a placement in a family operated foster home for a period of one year."). In *Risk Management Division*, the New Mexico Court of Appeals placed special importance on the state's intent as to the length and nature of the foster placement, as well as "the public policy basis for the exclusion" of household residents from coverage under the insurance policy. *Risk Mgmt. Div. of the Gen. Servs. Dept. of N.M. v. Farmers Ins. Co. of Az.*, 75 P.3d 404, 410 (N.M. Ct. App. 2003) (reversing grant of summary judgment and concluding genuine issue of material fact where foster child was in home for "long

9

term" care). However, the *Risk Management Division* court also concluded that, while a factor to be considered, length of placement was not the sole determining factor in foster child residency. *Id.* at 409.

Contrary to B.R.'s Parents' assertion, these cases do not proscribe a special residency analysis for foster children. Although these cases make it clear that length and classification of foster placement are factors to be considered, they substantively adopt *Alexander*'s requirement that a court consider totality of the circumstances in determining residency for insurance purposes. *See Alexander*, 982 F.2d at 1159. There is ample evidence that the Rileys intended B.R. to be a resident in their home. *See Boesecker*, 724 N.E.2d at 244 (interpreting insurance policy from the viewpoint of the insured). All of B.R.'s necessary possessions, including clothing and medication, were stored and administered at the Rileys' home. M. Riley Dep. at 11–13; D. Riley Dep. at 8–9. The Rileys took steps to ensure their home would be safe for B.R., including installing gates on the stairs, special door knobs, and pin locks on sliding doors. M. Riley Dep. at 10; D. Riley Dep. at 9–10. B.R.'s placement with the Rileys was not subject to a termination date, and the Rileys repeatedly stated that they did not intend to terminate the placement following the respite weekend with the Hughes. M. Riley Dep. at 14–15, 19; D. Riley Dep. at 12–14. The classification of B.R.'s placement as "Emergency Shelter Care," Hummer Aff. ¶ 4, does not alter this result, as there is no evidence that this designation carries with it any time limitation on the placement. *See* Hummer Aff. ¶¶ 9–10. Although a definite ending date is not required for a placement to be considered temporary, a general distinct time period is needed. *See Shockley*, 793 F. Supp. at 856; *Falgoust*, 160 P.3d at 140. Even though the ultimate goal of the placement was "family reunification"—*see* M. Riley Dep. at 20; D. Riley Dep. at 12—this

10

does not place any limitations on the placement that would change B.R.'s residency status at the time of his injury. Examining the totality of the circumstances in this case, the Court concludes that B.R. was a resident of the Rileys' household. The Court therefore finds that B.R. was an "insured person" under the terms of the Rileys' Homeowners Policy and not entitled to any coverage or a defense under the Family Liability Protection or Guest Medical Protection provisions of the Homeowners Policy.

## IV. CONCLUSION

For the reasons noted herein, Allstate's Motion for Summary Judgment [Dkt. 33] is GRANTED in its entirety. A separate judgment shall issue in favor of Allstate.

SO ORDERED: 10/27/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Jon C. Abernathy
GOODIN ABERNATHY LLP
jabernathy@goodinabernathy.com

Vicky Ann Nunn
NUNN LAW OFFICE
vickyn@kennunn.com

Michael W. Phelps
NUNN LAW OFFICE
mikep@kennunn.com

David B. Wilson
DAVID B. WILSON
renee.wilsonlaw@yahoo.com

Elizabeth J. Wysong
GOODIN ABERNATHY LLP
ewysong@goodinabernathy.com